matter on our docket is United States v. Smurphat, that's 24-1707. Am I pronouncing your client's name correctly? Mr. Smurphat. Smurphat? I believe, yes. Okay. May it please the court. Individuals under parole or probationary supervision have diminished privacy interests under our law, but their privacy interests are not non-existent. This case addresses the boundaries of such privacy interests. Early in the morning, a Sunday morning at 7 a.m., three parole officers seemed to barge their way into my client's single room occupancy hotel room and stood by his bed where he was sleeping, woke him up, he was in his underwear. Can I ask what, just because that's where you started, what is the daylight between a warrantless no-knock entry and consenting to a search that is unannounced? Because that seems to me to be part of what we're arguing with. Your Honor, when one consents to unannounced searches or when unannounced searches are authorized in the context of parole or probation, they're not unannounced searches where one can literally, the parole officers can barge into the privacy of your bedroom. Okay, but if he had, if somebody, let's just say somebody had knocked, he would not have had the option of saying no. Is that correct? That is correct, Your Honor. Okay, so again, so as a legal distinction, if you could help me understand what is a, the doctrinal significance between what I think you are arguing is a warrantless no-knock entry and a mandatory permission, granting a permission for someone to enter the premises whether or not they liked it or not. Your Honor, when one is granting entry to individuals, there's an opportunity to get your clothing on, there's an opportunity to put one's situation in order before answering the door. And they, what occurred here was a forced entry which itself becomes a search because anything observed in the context of that search is thus seized through the plain view exception. I have two questions about this, Ms. Murray, if you can help me out. First of all, did I overlook something? It seemed to me that the assertion that this was an unannounced forced entry is only in the legal papers, your legal papers, that there was never an affidavit from the defendant saying that that's how it went down. Did I miss something? You did not miss anything, Your Honor. If that's the case, why is this not basically forfeited below, not raised below, that that was the problem? Well, Your Honor, the defense attorney raised these issues in their motion. There was one document filed with some attachments and that was the motion filed by the defense attorney. They were attorney amendments to the court and there was no dispute from the government about the concept of being unannounced, forced entry, with the parole officers arriving at his bed with him in his underwear and waking him up. So this was not disputed below. But your client entered a plea with an appeal waiver and reserved one right. The defendant reserves the right to have an appellate court review of the determination adverse to the defendant on the following issue raised, defendant's pretrial motion, whether the search of the defendant's phone pursuant to the condition of parole violate the Fourth Amendment. Didn't say anything about his room or coming into his room unannounced. I mean, this, he took a plea, waived his right to appeal, and he made, he saw fit to specifically reserve the issue about the phone but not the room. Well, this is, how much clearer can it be that he hasn't raised, he didn't raise the issue below, before the court, and he clearly reserved one right. How does he now get a bite of the apple up here on an issue on, and he waives, he strikes a deal with the government to waive, to take a plea and says, I want to reserve one issue, my phone. But now in his appellate brief, with all due respect, you didn't, you weren't part of the thing below, so I'm not holding you to that. You pick up the case the way you find it. You're stuck with that. But it's, how much clearer can it be? Why would we give credence to this? Will not the ability to negotiate pleas in a cocktail? Well, with all due respect, Your Honor, what's being suppressed. You know what I hear when you say that. Because I take every response to be respectful. With all, but what's being suppressed here, what's being suppressed is obviously the contents of the phone. Sure. So when one says in an appeal waiver, I want to raise the issue of the search of my phone, I submit that that inevitably encompasses the circumstances under which the phone was seized. Well, there's an entirely different analysis as to the two, isn't there? That is correct, Your Honor. So, I mean, how do you get the benefit of two separate analyses all wrapped up in one issue here that you reserved your right to do on the appeal? So what you really reserved, the way we should read that is, I reserved my right to raise the issue about the appeal as to the phone in anything that might inherently be beneficial to me with regard to winning on the phone issue. I would say, Your Honor, when there's a reservation of the suppression of evidence that one gets to address both the actual search leading to that evidence and the circumstances under which the search occurred. So if I preserve my rights, they come into my house, and I preserve my rights with regard to them going, rifling through my drawers. But I take my pity and I say I'm only preserving my rights with regard to them rifling through my drawers. I've given up on the house, or I haven't given up on the house, under your theory? Your Honor, I will say the counsel below... Those are clearly distinct, aren't they? They're distinct, but, Your Honor, I would submit that the counsel below made it very clear in their papers that they were concerned about the manner of the entry as much as they were concerned about the phone. Well, sure, they did. They did, but they didn't reserve their rights. Your Honor, that agreement is drafted by the government. He was confronted with the language that Judge Perez drafted to you, which is that he was confronted with some pretty broad terms and conditions of his parole. Your Honor, I laid out in my papers my arguments on that issue of the waiver and the appeal waiver. And the case law cited by the government involves entirely different searches. We're talking about the search of a hotel room versus the search of a storage facility. So two entirely separate searches. I would just say the discovery of the phone, the manner of the discovery of the phone, and the search of the phone is encompassed in an appeal waiver to search that phone. Which wouldn't have happened if they hadn't entered. Right, which wouldn't have happened if they hadn't entered. Correct, yes. Ms. Murray, let me ask you this. It's going to be a harmless error, inevitable discovery type question, just to put it into a pigeon hole. If they had knocked and awakened him, he would have had to grant them entry. He would have had to open the door, as you say, correct? Yes. All right. And he had also agreed to searches of his premises. Why can't we say that the discovery of the phone would have happened one way or the other? You see, what I'm getting at here is the forcible entry, if this had been his personal residence, I could see where you might have an argument that the breaking into the residence caused damage, and he wants compensation for that or whatever. But I don't see how it gets us to the discovery of the phone and the search of the phone. I need you to tell me why that wouldn't have been inevitable. Because, Your Honor, even if they had made the unannounced visit and came to exercise their power, their search powers under the terms of the parole, this Court's case law required that there be reasonable suspicion for such searches. Okay. Well, that's another question. Yes. And now let's get to that, as to whether it's reasonable suspicion and regular supervision. I mean, what they knew at that time was, first of all, he's not supposed to have this phone, so he's in illegal possession of it. Then they knew that there was a history of using computer access or an electronic device, a computer, to access pornography in violation of probation. They knew he had another phone that he told them about, which could support an inference that he had this phone for reasons he didn't want them to know about. And then, finally, there's the frequency of probation debt violations demonstrating a continued interest in children, children's clothes, et cetera. I'm not sure I understand why that's not enough for both reasonable suspicion and regular supervision. What should I be thinking about that I'm not? Well, Your Honor, I have two answers to that. First of all, I still want to step back to the initial discovery of the phone. So those arguments about prior violations of probation involving potentially Internet-related pornography crime is not relevant because we're still before the point at which the phone is observed. Once the phone is observed, Your Honor, then we have a separate issue about how far do the probation officers get or the parole officers get to search that phone in the absence of a warrant. There was no exigency here, and I would submit that there's simply no reason why they can't go off and get it. They consented to search of electronic devices, right? Well, Your Honor. It would be more than reasonable suspicion. Well, the consent, of course, was a product of the initial entry and discovery of the phone. Well, it's his condition of his supervision, really, right? That is correct, Your Honor.  So they've got him in a possession of a phone he shouldn't have. At that point, I'm hard-pressed to understand how his consent isn't to that that's a reasonable search of something he shouldn't have, especially when he's used electronic devices before to access child pornography or pornography. Your Honor, I still bring us back to the point that we have absolutely no justification contained in this record why the three parole officers showed up at 7 in the morning on a Sunday morning. I'm sorry. I thought you were going to say that there's nothing in the affidavit that there was no, that they knew it was an unauthorized phone. They said, I mean, my reading of it was they saw that it was a phone, and maybe it was authorized, maybe it wasn't. They eventually consented to it. Is that right? Did the affidavit say immediately that they, they said that it was, it was an unauthorized phone, but there's no, I saw it and recognized it as not the phone that I approved? Now, I'm not sure how much that matters, because if it had been an authorized phone, he would have had the consent to do it. And if he wasn't an authorized phone, then under the Special Needs Doctrine, it would have, they would have gotten to be able to do it, because that was a breaking of his condition. But, like, I, I. Yes, Your Honor, that is correct that the affidavit itself does not clarify that the parole officer understood it to be. Okay, no, but now tell me why, Matt. Let's pretend we don't know. We don't know if the parole officer knew it was an authorized or unauthorized phone. How does it help your client? Because it seems to me he either consented because it's authorized, or if it's not authorized, then they've got a special needs justification. I would go back to the point that the consent was the product of the act, the initial forced entry into that apartment. And so it is the fruit of that poisonous tree, Your Honor. And we, we have no basis in the record for finding reasonable suspicion to do that initial entry into the apartment. So are you conceding that if we disagree with you as to the first part, everything that follows was legitimate? Because that's what your, that sounds just like what you just said. No, Your Honor, because I, as I argue in my papers, searches of cell phones are a unique beast, and the extent of. Then will you answer my question, then, please, about like how does we not get up in the same place because either consented to it, or it was justified under special needs? I mean, I'm not sure if the officer recognized it as an authorized or an unauthorized phone. I can't tell. But I don't know how, I'm having a hard time understanding how it matters, because it seems to me they're both coming in under either way, unless you can help me see what I'm missing. Well, Your Honor, I, I think the, the activation of the search component required him to turn over his passcode, and. Which he did. Which he did.  And which. He wasn't being held under gunpoint. He, they asked for it, and he gave it. Right. And so we would argue that, I would argue, had there been a hearing on this issue, that the, the consent was, was, was coerced in that context. Okay, but, but then that doesn't answer the question, though. It was either authorized, in which case they were allowed to search it. You wouldn't dispute that. Is that correct? If it was an authorized. If it was an authorized cell phone, were they entitled to search it under the agreement? Well, Your Honor, these, this is not really an agreement in the sense that these conditions are provided to him.  Under the conditions that he consented to. Under the conditions which he was forced to consent to, because they are conditions that are imposed upon release, and if you don't sign it, you're not going to get released.  So what we need to do is, is analyze this in terms of what is authorized under New York law and what's authorized under this circuit's law.  And that requires reasonable suspicion, both to enter the hotel room and to search the cell phone. Okay. Very good. Thank you so much. We'll hear from you on rebuttal. May it please the court. Nicholas Commender on behalf of the government. The only issue that is subject to this appeal, that has been preserved for this appeal, is whether the search of the defendant's phone, pursuant to the conditions of his parole, was authorized. Okay. Is that right, though? I mean, so the search of the cell phone directly resulted from the parole officer's visit and entry. Is that correct? That's correct. And could the cell phone search have occurred independently of the entry? Well, as a practical matter, they needed to be inside of the access. Exactly. And so why is, doesn't the illegal, why wouldn't an illegal search of a cell phone encompass the idea of how they got in there to search for the phone to begin with? Because they're distinct Fourth Amendment inquiries, which the defendant below, his counsel below, recognized and specifically disclaimed in the argument that he was relying purely on the entry into the room as a basis for suppression. And it's also clear from the briefing before this court that they are separate inquiries. Appellate counsel acknowledges. And the briefing makes them separate inquiries? Well, they are separate inquiries, Your Honor. It's simply that the briefing, the parties have recognized that fact. I don't think that there can be any legitimate dispute because the defendant has acknowledged in briefing the issue that they are separate issues. And to be clear, we believe that both of them were constitutionally permissible, both the entry. Okay, so I just want to be very, I'm glad you went there because I'm actually, I struggled from the papers trying to figure out how far the government was asking us to go. Is the government's position that the parole officers had a right to conduct a no-knock warrantless entry? No, the government's position is that even if that happens, and again, the record was not developed on that fact. It was not developed on that. It was not developed. And part of the reason it wasn't developed, Your Honor, is because when the defendant framed the issue in his moving brief, it was only relating to the search of the phone, not the entry into the room. So that's why it's devoid of that. The defendant had a burden of production as the move-in and did not submit an affidavit to establish those facts as he was required to do. Well, is it your position that it would have been okay? Well, it may have led... Forcible entry without knocking first would have been okay? No, Your Honor. But I think it's important to distinguish between whether that should lead to exclusion of evidence versus some other type of consequence for the officers who do that. And that's what Michigan v. Hudson recognizes. And to the point that I think, Judge Perez, that you were getting at, the officers in this case, the parole officers, undeniably had a right to be in that hotel room. They had a right to search that hotel room. The defendant could not refuse them entry. That is similar to the situation in Michigan v. Hudson where the officers unquestionably had a search warrant for the residence they were located in. But I think the point is, and I'm not saying this with any kind of approval, that if you had knocked, he would have had the time to slip the phone under the mattress. And maybe you would have found it, and maybe you wouldn't have. So that's the thrust of the argument here. But that's not an interest that the law protects, Your Honor. And that's what the court recognized in Michigan v. Hudson, is that when we're thinking about exclusion of evidence, we need to evaluate whether the transgression that took place is going at the evidence that is to be suppressed. And a defendant does not have a right to secrete evidence from his probation officer or parole officer. And so in the same way that an officer who violates a knock-and-announce requirement in executing a search warrant may be subject to civil penalties, may be subject to discipline at work, perhaps there would be similar consequences if, in fact, the unannounced entry as the defendant alleged took place. So we don't have to decide, though, on the permissibility of a warrantless, no-knock forced entry because you think the issue was forfeited. Yes. And even if not, the remedy would still not be suppression because he would have had to consent anyway. That is correct. And with respect to the search of the phone itself, the district court correctly found that this court's decision in Bragg's controls. The relevant facts, as far as that is concerned, were not in dispute. The search was conducted by parole officers and only by parole officers. There were no police officers present at the initial search. The defendant's conditions of parole unquestionably allowed for the search of electronic devices. Okay. So is it the government's position that the condition incorporates an idea of there not being reasonable suspicion? Correct. So the government's position is that even without reasonable suspicion, because of the conditions, they're entitled to search? Correct. The condition itself does not require reasonable suspicion. The condition that was imposed and that the defendant acknowledged does not require reasonable suspicion. And so that's why we are exactly in the Bragg's framework. The same was true in Bragg's. But don't most of the cases, and I didn't boil the ocean on this part, but don't most of the cases dealing with the kind of searches that are pursuant to conditions of release, that there's some sort of reasonable suspicion? Don't they usually include, like, an anonymous tip or something else? I thought you were going to say you had it because of the drug test. It's your position. Why don't you tell me, what do you think is the best case for the proposition that just because there's a conditions release means that they have full carte blanche to do whatever search they want for no reason? Well, I wouldn't go so far as to say that it's carte blanche, Your Honor. But what I would say is the court in Bragg's recognized that reasonable suspicion was not required because it was conceded, both by the government and the court below found that the anonymous tip was not something that rose to the level of reasonable suspicion. And what this court, Judge Wesley wrote in the decision, what this court found was that what you ask in that situation is not whether there was reasonable suspicion for a particular search, but rather whether it was reasonably related to the parole officer's search. So it's not full carte blanche, there's something else, and that something else is whether or not it's reasonably related. Correct. And so if the defendant could have shown, for instance, that there was some harassment that was taking place here, that was the example in Judge Wesley's opinion in Bragg's, and the footnote, that might change the analysis. There's been no such allegation in this case of harassment. And in fact, to Your Honor's point, Judge Perez, there certainly was very troubling evidence at the time that they went to visit him that would justify the search here. He had just one month prior failed a drug test, and after being confronted that, had said that the individuals who took the drug test were lying and they were criminals. He had, as Judge Rajiv has set forth, a documented and extensive history of violating his conditions of parole, including through using unauthorized electronic devices, and a history of abusing children. And so all of that certainly would give more concern to a parole officer than the anonymous tip in Bragg's. Well, that gets to the question of regular supervision, which you're not saying that Bragg's excuses inquiry about, right? I'm sorry, Your Honor. Well, you're saying Bragg says no need for reasonable suspicion, but it doesn't say no need for this to be regular supervision, which they're disputing. They're saying that this did not satisfy regular supervision. And I'm going to suggest to you that what fortifies your regular supervision argument is the fact that there's reasonable suspicion here. I mean, it's very difficult for me anyway to see how this isn't appropriate supervision given all of the suspicious circumstances here. So your attempt to delink them seems to me to make your argument harder when you've got an argument that might actually be quite convincing. Well, that I apologize. And I didn't mean to suggest that I was necessarily embracing that burden. I think that's the only distinction I was trying to make, Your Honor. I agree that the facts of this case, frankly, give rise to reasonable suspicion. Certainly the circumstances by which they come by the phone, they see it next to the defendant in the building. If they had none of these circumstances, if he didn't test positive, if he didn't have a history of chronic violations, to just think that showing up on any old morning and breaking the door down is regular supervision strikes me as a much harder argument to make. I don't disagree, Your Honor. And again, that fact, while it is presented in the briefing, was not established by the defendant in the way that he would have needed to for this court to rely on. He did not submit an affidavit in support of his motion. So the government does not concede that that is, in fact, what happened here. But I don't disagree that it might be a different analysis if there was nothing else in his background that suggested any level of concern. Although certainly, even in that circumstance, the parole officers were entitled to make an unannounced home visit. His conditions allowed for that. And Reyes makes clear that you don't need any type of reasonable suspicion to do a home visit. And they were also entitled to do a review of his phone under his conditions of parole, even without any level of reasonable suspicion. And so under those circumstances, we do not believe that suppression is an appropriate remedy. I see my time is over. So unless the court has any further questions, we would otherwise rest on our papers. Thank you. Thank you. You've got two minutes. And we gave you a lot of time in the first instance. I'm going to hold you to these. Thank you, Your Honors. The government stated in their argument that this is not an interest the law protects. But what is the interest we're talking about? We're talking about the interest to be at home, asleep, in your bed at 7 o'clock in the morning. That's the interest that was violated. The primary interest here that is the focus of my briefing and the primary issue, get the barging into his room at that hour in the morning with two other parole officers, three in total. The argument of defense in the moving papers was that this looked like a law enforcement search. This looked like police officers looking for evidence of a crime. This didn't look like regular supervision. Do we have an affidavit in the record of your client telling us, verifying all those things that you just said? No. That is correct, Your Honor. Because he didn't contest the circumstances under which they entered, did he? He did not contest that circumstance in the- Don't you think he should have tested that? Because that's really the linchpin to everything you've told us. Because the government didn't oppose it. Because the- Wait a second. Wait a second. Yeah. He moved to suppress. Last time I checked, you bore the burden of-not you, your client and his counsel-bore the burden of articulating what the constitutional violation was since the remedy sought was suppression. The suppression-if there was a constitutional violation at the threshold, at the door, then suppression would have been that and everything that fell from there. Correct? And so, therefore, where the phone was, was irrelevant, wasn't it? Wasn't it? Where the phone was, I believe, is entirely relevant here. The issue-the defense counsel- Not once they break the door down. If he's right about his Fourth Amendment rights at the threshold, everything that comes thereafter is suppressed. Am I right? Correct. Yes. Thank you. Yes. And, Your Honor, the defense raised all these issues in attorney affirmance. They were conceded, I submit, by the government. And so there was no need for counsel to then start submitting an affidavit to state the things that had already been accepted. They did not concede a Fourth Amendment violation at the threshold, did they? They certainly did not dispute that the officer stood by his bed with his underwear and woke him up, Your Honor. I admire your facility, Counsel. Your Honor, practices are different in different districts. It may have been one where I would have put in an affidavit when I was a federal defender, but- Be careful with upstate. But the absence of an affidavit doesn't necessarily mean that it couldn't have been requested. He did ask for a hearing, and a hearing could have been granted. And then we could have learned exactly why they broke his door down that morning. Thank you so much. Thank you. We will take the case under re-advisement.